# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

SANDRA LIVELY, ET AL.                    *CIVIL NO. 6:13-2756

VERSUS                                   * MAGISTRATE JUDGE HILL

RONALD J. THERIOT, ET AT.                *BY CONSENT OF THE PARTIES

## REASONS FOR JUDGMENT

Pending before the Court is the Motion for Summary Judgment filed by defendants, Sheriff Ronald Theriot ("Theriot"), Deputy Jedidiah Champagne ("Champagne"), Deputy Carey Jones ("Jones") and Deputy Andrew Bonvillain ("Bonvillian") on July 22, 2014.[1]  [rec. doc. 20].   The plaintiffs have filed opposition [rec. doc. 31], to which the defendants filed a Reply [rec. doc. 33].   Oral argument on the Motion was held and the Motion was taken under advisement. [rec. doc. 34].  Post-Hearing Memorandums were filed by each party. [rec. docs 35 and 36].

For the reasons which follow, the Motion for Summary Judgment [rec. doc. 20] is **GRANTED** as follows.  All federal § 1983 claims asserted by the plaintiffs against Sheriff Theriot, Deputy Champagne, Deputy Jones and Deputy Bonvillain are **DISMISSED WITH PREJUDICE.**  All state law claims asserted by the plaintiffs against Sheriff Theriot, Deputy Champagne, Deputy Jones and Deputy Bonvillain are **DISMISSED WITHOUT PREJUDICE**.

---

[1]On Motion by the plaintiff, the hearing of the Motion was delayed pending the depositions of Deputies Champagne, Bonvillain and Jones. [rec. docs. 22, 23, 24 and 28].

## BACKGROUND

Plaintiffs Sandra Lively and Latoya Edmond filed the instant civil rights lawsuit against the defendants on September 27, 2013.  In their Complaint, plaintiffs assert that the civil rights of Alvin Davis, Jr. ("Davis") were violated on September 28, 2012 when Davis was fatally shot during an attempted arrest.  Plaintiffs' claims are asserted under 42 U.S.C. § 1983 and Louisiana state law.

By the instant Motion, Deputies Champagne, Jones and Bonvillain contend that they are each entitled to qualified immunity and that, therefore, plaintiffs' federal claims against them should be dismissed.  More specifically, these defendants contend that plaintiffs cannot demonstrate that the officers violated Davis' constitutional rights because the alleged use of excessive force was objectively reasonable under the circumstances when evaluated in the context in which the force was deployed.  These defendants also each assert that even if plaintiffs have demonstrated a violation of Davis' constitutional rights, they are nevertheless qualifiedly immune from suit because all of their actions were objectively reasonable in light of clearly established law.

Sheriff Theriot contends that, with respect to plaintiffs' federal claims, he cannot be held liable under a theory of *respondeat superior* and that the plaintiffs have failed to allege or put forth sufficient evidence to sustain an individual supervisory or official capacity claim against him.

**Standard on Motion for Summary Judgment**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[2]

Rule 56(e) provides, in pertinent part, as follows:

If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)[3], the court may: . . . (3) grant summary judgment if the motion and supporting materials - including the facts considered undisputed - show that the movant is entitled to it . . . .

The Motion for Summary Judgment is properly made and supported. Thus, the plaintiffs may not rest upon the allegations in their pleadings but, rather, must go beyond the pleadings and designate specific facts demonstrating that there is a genuine issue for trial. *Celotex v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553-54 (1986). However, metaphysical doubt as to the material facts, conclusory allegations, unsubstantiated assertions and those supported by only a scintilla of evidence are insufficient. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

---

[2]Rule 56 was revised, effective December 1, 2010, "to improve the procedures for presenting and deciding summary-judgment motions and to make the procedures more consistent with those already used in many courts. The standard for granting summary judgment remains unchanged." *See* Committee Notes, Rule 56.

[3]Rule 56(c)(1) provides, in pertinent part, as follows:
A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Moreover, summary judgment is mandated against a party who fails to make a showing sufficient to establish an essential element of that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 106 S.Ct. at 2552. Thus, with respect to those issues on which the movant bears the burden of proof at trial, the movant need not produce evidence negating the existence of material fact, but may merely point out the absence of evidence supporting the non-movant's case. *Id.* at 2553-2554; *Duplantis v. Shell Offshore, Inc.*, 948 F.2d 187, 190 (5th Cir. 1992).

The plaintiffs have submitted evidence in opposition to the instant Motion. However, the plaintiffs' evidence fails to demonstrate that there is a genuine issue of material fact with respect to the § 1983 claims asserted against Deputy Champagne, Deputy Jones, Deputy Bonvillain and Sheriff Theriot. Accordingly, summary judgment with respect to these claims is appropriate.

## LAW AND ANALYSIS

### I.  Qualified Immunity

Government officials are entitled to qualified immunity for civil damages if their conduct does not "violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982); *Anderson v. Creighton*, 483 U.S. 635, 639-40, 107 S.Ct. 3034, 3039, 97 L.Ed.2d 523 (1987). Claims of qualified immunity must be evaluated in the light of what the officer knew at the time he acted, not on facts discovered subsequently. *Luna*

4

*v. Mullenix*, 773 F.3d 712, 718 (5th Cir. 2014) *citing Graham v. Connor*, 490 U.S. 386, 396, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989) and *Lytle v. Bexar Cnty., Tex*., 560 F.3d 404, 411 (5th Cir. 2009).  Qualified immunity is not merely a defense to liability but an immunity from suit. *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 1208, 131 L.Ed.2d 60 (1995);  *Mitchell v. Forsyth*, 472 U.S. 511, 526, 105 S.Ct. 2806, 2815, 86 L.Ed.2d 411 (1985).

Claims of qualified immunity require a two-step analysis.  First, the court must determine whether the plaintiff has demonstrated that "the officer's conduct violated a constitutional right." *Mace v. City of Palestine,* 333 F.3d 621, 623 (5th Cir. 2003);  *Hall v. Thomas*, 190 F.3d 693, 696 (5th Cir. 1999) *citing  Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d 277 (1991).  If there is no constitutional violation, the court's inquiry ends.  *Mace,* 333 F.3d at 623.

If the plaintiff has shown the deprivation of a constitutional right, the court must then decide whether the defendant's conduct was objectively reasonable in light of "clearly established" law at the time of the alleged violation.  *Hall,* 190 F.3d at 696 *citing Siegert*, 500 U.S. at 231-232.  This "second prong of the qualified immunity test is better understood as two separate inquiries: whether the allegedly violated constitutional rights were clearly established at the time of the incident; and, if so, whether the conduct of the defendants was objectively unreasonable in the light of that then clearly established law." *Estate of Sorrells v. City of Dallas,* 45 Fed. Appx. 325 (5th Cir. 2002) *quoting Hare v. City of Corinth, Miss.,* 135 F.3d 320, 326 (5th Cir. 1998); *Tarver v. City of Edna*, 410 F.3d 745, 750 (5th Cir. 2005).

5

Thus, even if it is determined that the official's conduct was unconstitutional, that is, that the defendant violated the plaintiff's clearly established constitutional rights, the court must nevertheless decide whether the conduct was "objectively reasonable" and, if so, the defendant may still be entitled to qualified immunity. *Kipps v. Callier,* 197 F.3d 765, 768-69 (5th Cir. 1999) (citations omitted).  "Qualified immunity thus protects an official whose conduct was objectively reasonable, even if the conduct infringed upon a constitutional right of the plaintiff." *Wagner v. Bay City, Texas*, 227 F.3d 316, 321 (5th Cir. 2000) *quoting Gutierrez v. City of San Antonio,* 139 F.3d 441, 445 (5th Cir. 1998) *citing Anderson,* 483 U.S. at 641, 107 S.Ct. at 3040.

"The qualified immunity standard gives ample room for mistaken judgments . . . ." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991).  Thus, if officials of "reasonable competence could disagree . . . immunity should be recognized."  *Gibson v. Rich*, 44 F.3d 274, 277 (5th Cir. 1995); *Tarver*, 410 F.3d at 750. Stated differently, "[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments," and "protects all but the plainly incompetent or those who knowingly violate the law." *Ashcroft v. al-Kidd*, ⸺ U.S. ⸺, ⸺, 131 S.Ct. 2074, 2085, 179 L.Ed.2d 1149 (2011). Consequently, "even law enforcement officials who reasonably but mistakenly use excessive force are entitled to immunity." *Wagner*, 227 F.3d at 321.

While it is often appropriate to examine the qualified immunity inquiries sequentially, courts are vested with sound discretion in deciding which of the prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case

6

at hand.  *Pearson v. Callahan*, 555 U.S. 223, 236, 129 S.Ct. 808, 818 (2009).

**A. Constitutional Violation**

Apprehension by the use of deadly force is a seizure subject to analysis under the Fourth Amendment.  *Plumhoff v. Rickard*, ––– U.S. –––, 134 S.Ct. 2012, 2021, 188 L.Ed.2d 1056 (2014) *citing Tennessee v. Garner*, 471 U.S. 1, 7, 105 S.Ct. 1694, 85 L.Ed.2d 1 (1985) and *Graham v. Connor*, 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). Thus, under the first prong of the qualified immunity analysis, the plaintiffs must produce facts sufficient to show that the officers' actions violated Davis' Fourth Amendment rights.

To show a Fourth Amendment violation, the plaintiffs must produce facts sufficient to show that Davis suffered (1) an injury; (2) which resulted directly from a use of force that was clearly excessive to the need; and (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000)*; Ikerd v. Blair*, 101 F.3d 430, 433-434 (5th Cir. 1996); *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). "This is an objective standard: 'the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.' " *Ramirez v. Knoulton*, 542 F.3d 124, 128–29 (5th Cir. 2008) *quoting Graham*, 490 U.S. at 396, 109 S.Ct. 1865).  The force must be objectively reasonable under the totality of the circumstances. *Graham,* 490 U.S. at 397.  The Fourth Amendment's objective reasonableness test applies to all uses of force, including actions which fall within the definition of "deadly force".  *Scott v. Harris*, 550 U.S. 372, 382-383, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Reasonableness is judged from the perspective of a reasonable officer on the scene, rather than with 20/20 hindsight. *Id*., 490 U.S. at 396. "To gauge the objective reasonableness of the force used by a law enforcement officer, [a court] must balance the amount of force used against the need for force," paying "careful attention to the facts and circumstances of each particular case." *Flores v. City of Palacios,* 381 F.3d 391, 399 (5th Cir. 2004) *citing Graham*, 490 U.S. at 396; *Ikerd*, 101 F.3d at 434. Factors to consider when determining whether the force used was objectively reasonable include the severity of the crime at issue, whether the suspect posed an immediate threat to the safety of officers or others, and whether the suspect actively resisted arrest or attempted to avoid arrest. *Graham*, 490 U.S. at 396; *Lytle*, 560 F.3d at 411. *Graham* instructs courts not to engage in second-guessing officers about the amount of force that is necessary in a particular situation, recognizing that officers have to make split second, on the scene decisions about the amount of force that is necessary in a particular situation in circumstances that are tense, uncertain and rapidly evolving. *Id.,* 490 U.S. at 396-397*; Ramirez,* 542 F.3d at 129 *citing Graham*, 490 U.S. at 397; *Tanner v. Harris,* 31 Fed.Appx. 154 (5th Cir. 2001) *citing Graham,* 490 U.S. at 396-97; *Wagner v. Bay City Texas*, 227 F.3d 316, 321 (5th Cir. 2000) *citing Graham,* 490 U.S. at 396-97.

When deadly force is used, the severity and immediacy of the threat of harm to officers or others are paramount to the reasonableness analysis. *Luna,* 773 F.3d at 719; *Plumhoff*, ⸺ U.S. at  ⸺, 134 S.Ct. at 2021; *Scott*, 550 U.S. at 386, 127 S.Ct. 1769 (noting that the use of deadly force was not objectively unreasonable when "[t]he car chase that respondent initiated in this case posed a substantial and immediate risk of serious physical injury to others"); *Mace,*

8

333 F.3d at 624  ("Use of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officer or others."); *Thompson v. Mercer*, 762 F.3d 433, 440 (5th Cir. 2014) (noting that "the question is whether the officer had reason to believe, at that moment, that there was a threat of physical harm"); *Hathaway v. Bazany*, 507 F.3d 312, 320 (5th Cir. 2007) (noting that the "reasonableness of an officer's use of deadly force is . . . determined by the existence of a credible, serious threat to the physical safety of the officer or to those in the vicinity"); *Bazan ex rel. Bazan v. Hidalgo Cnty.*, 246 F.3d 481, 493 (5th Cir. 2001) ("The excessive force inquiry is confined to whether the Trooper was in danger at the moment of the threat that resulted in the Trooper's shooting."). Indeed, in cases involving the shooting of a suspect, the Fifth Circuit has stated that the "core issue" is "whether the officer reasonably perceived an immediate threat." *Luna,* 773 F.3d at 722 *citing Reyes v. Bridgwater*, 362 Fed.Appx. 403, 408 (5th Cir.2010).  "[T]he focus of the inquiry is the act that led the officer to discharge his weapon." *Id. quoting Reyes quoting Manis v. Lawson*, 585 F.3d 839, 845 (5th Cir. 2009); *see also Bazan*, 246 F.3d at 493.

While the Court recognizes that this is a close case with respect to Deputies Champagne and Jones, the Court ultimately concludes that plaintiffs have not carried their burden of proof in showing that Deputy Champagne, Deputy Jones and Deputy Bonvillain acted objectively unreasonable under the circumstances.  Thus, the Deputies did not violate Davis' Fourth Amendment rights.

The summary judgment evidence demonstrates that Davis' vehicle was blocked from behind by the officer's vehicles, both of which had their red and blue lights activated.  The

officers verbally identified themselves as police officers and loudly commanded Davis to keep his hands in plain view.  Despite these warnings and obvious indications of police presence, Davis nevertheless abruptly put his vehicle in reverse, drove backwards and actually struck Deputy Bonvillain who was standing behind Davis' vehicle, causing him to stumble and placing him in grave danger of being pinned between the rear of Davis' vehicle and Deputy Champagne's police vehicle.  Thus, it is clear that Davis' actions caused Bonvillain to be in imminent grave danger of serious bodily injury.

Further, it was not until after Bonvillian had been struck by Davis' vehicle, when Bonvillain was in immanent physical danger, that the officers fired their weapons at Davis' vehicle.  Bonvillain testified that he did not fire his weapon until after he was struck by Davis' vehicle, lost his balance and got up, while the vehicle was still traveling in reverse.  [Bonvillain depo., at pg. 31, 39].  Indeed, under the circumstances,  Bonvillain testified that he considered Davis' car a weapon. [*Id.,* at pg. 36-39].  Champagne testified that he began to shoot when he recognized that Bonvillain was in immediate danger, that is, when he saw Davis' vehicle backing up and saw through his peripheral vision that Deputy Bonvillain was directly behind the vehicle.  [Champagne depo., at pg. 107-109].  Deputy Jones testified that he saw Davis' vehicle moving "quickly" in reverse, and with his peripheral vision, he saw someone get struck by Davis' vehicle and that person falling; he heard Deputy Champagne shout "shoot" with "fear and importance" in his eye, and considering the totality of these circumstances, only then fired his weapon. [Jones depo., at pg. 62-63].

10

Finally, Deputies Champagne and Bonvillain testified that they stopped firing when Davis' vehicle stopped and began traveling forward and the threat to Bonvillain had therefore ceased. [Champagne depo., at pg. 110; Bonvillain depo., at pg. 39].  Jones similarly testified that he stopped shooting, in accordance with his training, when the vehicle stopped and the threat of physical harm was no longer present. [Jones depo., at pg. 62 and 57].

In light of the above cited evidence[4], it is clear that Davis' actions by throwing his vehicle in reverse in an attempt to evade arrest, traveling backward toward and striking Bonvillain, and placing Bonvillain in the precarious position of further serious physical harm by being pinned between the two vehicles, rendered the Deputies' responsive action Constitutional.

The threat to Bonvillain posed by Davis' reckless attempted vehicular flight from the scene was both serious and immediate.  Although firing into Davis' vehicle created a significant risk of injury to Davis, that risk is outweighed by the imminent risk of serious physical harm to Bonvillain posed by Davis' reckless attempted vehicular flight from the scene.  The Deputies were therefore clearly justified in using their weapons to stop Davis from endangering

---

[4]Plaintiffs argue the Deputies testimony should not be accepted by the Court because their initial responses to plaintiffs' counsel's questions did not include the same detail as their answers to subsequent questions by counsel, and contained discrepancies among their stories.  The Court cannot accept this argument.  The fact that the deponents provided additional detail on further questioning is not surprising or in any way out of the ordinary.  Moreover, under the rapidly evolving circumstances, the Court is not surprised that there are relatively minor discrepancies in the testimony.  Indeed, the Fifth Circuit has rejected a similar argument noting the Courts have learned to expect that the version of facts related by witnesses "will almost always differ somewhat in the myriad details of the action", given the tension and element of surprise in such a stressful situation.  *See Fraire v. City of Arlington*, 957 F.2d 1268, 1279 (5th Cir. 1992).  In this case, as in *Fraire*, these differences are lacking in significance and are therefore insufficient to place facts at issue.

Bonvillain further.

Ultimately, it was Davis, not the Deputies, who placed himself in danger by unlawfully and recklessly attempting to flee from the scene that necessitated the split-second decision made by the Deputies.  *See Scott,* 127 S.Ct. at 1778 (finding it appropriate to take into account the "relative culpabilties" of the parties involved).  Although, in retrospect, there may have been alternative courses of action for the Deputies to take, the Court, in accordance with the instructions of *Graham v. Connor*, will not use "the 20-20 vision of hindsight" to judge the reasonableness of the Deputies' use of force, employed under tense, uncertain and rapidly evolving circumstances. *See Mace*, 333 F.3d at 625.

While plaintiffs argues that qualified immunity should not be granted to Champagne or Jones because they allegedly did not directly view Davis' vehicle strike Bonvillian, as opposed to some other person, that argument lacks merit.  Both the Supreme Court's decisions in *Scott* and *Brosseau* and the Fifth Circuit's decision in *Thompson*, instruct that  the officers employing force need not be aware of the precise location or identity of the other officers and civilians they were acting to protect. *See Scott*, 550 U.S. at 384, 127 S.Ct. 1769 ("[R]espondent posed an actual and imminent threat to the lives of any pedestrians who *might* have been present." (emphasis added)); *Brosseau v. Haugen*, 543 U.S. 194, 197, 125 S.Ct. 596, 160 L.Ed.2d 583 (2004) (granting qualified immunity to an officer who fired at a driver who had not yet driven his car in a dangerous manner to prevent possible harm to "other officers on foot who [she] believed were in the immediate area . . . [and] any other citizens who might be in the area." (internal quotation marks and citation omitted)); *Thompson*, 762 F.3d at 439, 2014 WL

3882460, at *5 (holding that it was sufficient for the officer to reasonably believe there "might be other travelers on the road," even though the officer was not "aware of their presence"); *see also Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 581 (5th Cir. 2009) (recognizing that "the holding of Scott was not dependent on the actual existence of bystanders – rather, the Court was also concerned about the safety of those who could have been harmed if the chase continued"). Here, both were sufficiently aware that an officer was in imminent danger as a result of Davis' actions when they fired their weapons. Deputy Champagne knew Deputy Bonvillain was directly behind the rapidly reversing Davis vehicle and Deputy Jones saw a person get struck by the Davis vehicle and fall down.

To the extent that plaintiffs argue that the number of shots fired by the Deputies renders their use of force objectively unreasonable, that argument lacks merit. The Supreme Court in *Plumhoff* rejected this same argument, finding that the number of shots fired does not change the reasonableness calculus. To the contrary, if firing at a suspect is initially justified to end a severe threat, "the officers need not stop shooting until the threat has ended." *Plumhoff*, 134 S.Ct. at 2022. This Court has found that the officers actions were initially justified to end a severe and immanent threat to Deputy Bonvillain. Furthermore, they stopped firing when the threat had ceased, that is, when Davis' vehicle stopped moving backward and began traveling forward. This would be a different case had the Deputies continued to fire at the vehicle moving away from them or had Davis discontinued his flight and given himself up. However, that is not what the evidence shows.

13

Finally, the Court cannot find that the Deputies' failure to remember details renders their accounts of the incident unreliable.  Initially, the Court notes that on Motion for Summary Judgment, while the court must draw all reasonable inferences in favor of the nonmoving party, the Court should not make credibility determinations or weigh the evidence.  *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000); *Liberty Lobby*, 477 U.S. at 255; *Gray v. Powers*, 673 F.3d 352, 354 (5th Cir. 2012) (citation and quotation marks omitted) ("The evidence should be viewed in the light most favorable to the non-moving party, and this court should refrain from making credibility determinations or from weighing the evidence.").  "[A] motion for summary judgment cannot be defeated solely by conclusory allegations that a witness lacks credibility.

Nevertheless, when the circumstances are conducive to lying, well-supported suspicion of mendacity may serve as a legitimate basis for the factfinder's reasonable inferences concerning the ultimate facts at issue." *Thomas v. Great Atl. & Pac. Tea Co.*, 233 F.3d 326, 331 (5th Cir. 2000) (footnote omitted). Summary judgment is not appropriate when "questions about the credibility of key witnesses loom . . . large" and the evidence could permit the trier-of-fact to treat their testimony with "skeptical scrutiny." *Id.* at 331.   The evidence before this Court, however, including the extremely brief period of time the Deputies had to respond to the serious threat posed by Davis' vehicle and the lack of specific facts to the contrary, requires a finding that the officers' responses to the questions posed were entirely reasonable, and "does not amount to a 'well-supported suspicion of mendacity' undermining [their]

14

credibility." *See Bazany*, 507 F.3d at 322 (citation omitted).  Indeed, the majority of the alleged

non-responsive answers were related to facts extraneous to those of the actual shooting; given

the brevity of the encounter and rapid response time, each deputy remembered and recounted

their actions that night with relative clarity.  *See* Jones, at pgs. 55-65; Bonvillain, at pgs. 27-43;

Champagne, at pgs. 56-65, 83-99, 103-111].

For these reasons, the Court concludes that Deputies Champagne, Jones and Bonvillain

did not violate Davis' Fourth Amendment rights.  The Deputies are therefore entitled to

qualified immunity on the plaintiffs' federal individual capacity claims.

## II.  Official Capacity Claims

Plaintiffs have also sued Deputies Champagne, Jones and Bonvillain in their official

capacities.  An official capacity suit is the equivalent of a suit against the entity of which the

officer is an agent.  *Kentucky v. Graham*, 473 U.S. 159, 165-166 (1985); *Brandon v. Holt*, 469

U.S. 464, 471-472 (1985); *Hafer v. Melo*, 112 S.Ct. 358, 361 (1991); *McMillian v. Monroe

County, Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997)[5] ; *Burge v. St.

Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999)   Municipalities may be held liable under

---

[5]The Supreme Court in *McMillian* explained that:

> a suit against a governmental officer "in his official capacity" is the same
> as a suit " 'against [the] entity of which [the] officer is an agent,' "
> *Kentucky v. Graham*, 473 U.S. 159, 165, 105 S.Ct. 3099, 87 L.Ed.2d 114
> (1985) *quoting  Monell v. New York City Dept. of Social Servs*., 436 U.S.
> 658, 690, n. 55, 98 S.Ct. 2018, 56 L.Ed.2d 611(1978) and that victory in
> such an "official-capacity" suit "imposes liability on the entity that [the
> officer] represents,"  *Brandon v. Holt,* 469 U.S. 464, 471, 105 S.Ct. 873,
> 83 L.Ed.2d 878 (1985).

*McMillian,* 520 U.S. at 785 n. 2, 117 S.Ct. 1734.

§ 1983 for constitutional violations if: (1) there is a constitutional violation; (2) an official policy or custom; and (3) a showing that the official policy or custom was the operational force behind the constitutional violation. *Bellard v. Gautreaux*, 675 F.3d 454, 462 (5th Cir. 2012) *citing Monell v. Dep't of Soc. Ser.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

When there is no underlying individual constitutional violation for which a municipal defendant can be held derivatively liable on the basis of its policies or customs, there can be no liability against the municipality or its employees in their official capacities. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 528-529 (5th Cir. 1999); *Tejada v. Knee*, 228 F.3d 409, 2000 WL 1056124, *2 (5th Cir. 2000) (unpublished); *Breaux v. Brown,* 2006 WL 3760242, *2 (W.D. La. 2006); *Patin v. Richard*, 2011 WL 9118, *8 (W.D. La. 2011) *citing Ashford v. City of Lafayette*, 2008 WL 5157900, *11 (W.D. La.2008); *Vicknair v. Louisiana Dept. of Wildlife and Fisheries*, 2013 WL 1180834, *18-19 (W.D. La. 2013).

In this case, plaintiffs have failed to set forth a viable Constitutional claim against the Deputies in their individual capacities.  Thus, in the absence of any underlying constitutional violation, plaintiffs cannot establish a claim against the Deputies in their official capacities as such a suit is tantamount to a suit against their municipal employer.[6]  *Id.*

Accordingly, to the extent that plaintiffs assert any federal official capacity claim against Deputy Champagne, Deputy Jones or Deputy Bonvillain, those claims are properly dismissed with prejudice.

---

[6]*See* fn. 3, *supra.*; *Kentucky v. Graham*, 473 U.S. 159 (1985); *Brandon v. Holt*, 469 U.S. 464 (1985); *Hafer v. Melo*, 112 S.Ct. 358 (1991); *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-85, 117 S.Ct. 1734, 138 L.Ed.2d 1 (1997) ; *Burge v. St. Tammany Parish,* 187 F.3d 452, 466 (5th Cir. 1999).

16

### III.  Sheriff Theriot

Plaintiffs argue that Sheriff Theriot is liable for failing to adequately train, supervise and discipline deputies, thereby condoning and allowing the alleged unconstitutional behavior by his subordinates.

A supervisor may not be held liable under § 1983 on any theory of vicarious liability. *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005).  Rather, to be liable under § 1983, a supervisory official  must be personally involved in the constitutional deprivation, or there must be a sufficient causal connection between the supervisor's alleged wrongful conduct and the constitutional violation. *Thompkins v. Belt*, 828 F.2d 298, 303-04 (5th Cir. 1987).  Thus, a supervisory official may be liable when enforcement of a policy or practice results in a deprivation of federally protected rights.  *Alton v. Texas A&M University*, 168 F.3d 196, 200 (5th Cir. 1999); *Vicknair v. Louisiana Dept. of Wildlife and Fisheries*, 2013 WL 1180834, *16 (W.D. La. 2013). In this case, there is no evidence to suggest that Sheriff Theriot was personally involved in the alleged use of excessive force.  Thus, only the second theory of liability is applicable.

A supervisory official not personally involved in the alleged constitutional violation may be liable under a failure to train or supervise theory under § 1983 if: "(1) the supervisor either failed to supervise or train the subordinate official; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference."  *Estate of Davis, 406 F.3d at 381; Thompson v.*

*Upshur County*, 245 F.3d 447, 459 (5th Cir. 2001); *Brown v. Callahan*, 623 F.3d 249, 254 and fn. 1 (5th Cir. 2010); *Vicknair*, 2013 WL 1180834 at *17 *citing Thompson, supra.*, *Roberts v. City of Shreveport*, 397 F.3d 287, 292 (5th Cir.2005) and *Mesa v. Prejean*, 543 F.3d 264, 274 (5th Cir. 2008). [7]

A "plaintiff must allege with specificity how a particular training program is defective." *Roberts*, 397 F.3d at 293. "Plaintiffs cannot prevail by styling their complaints about the specific injury suffered as a failure to train claim." *Id. citing City of Canton*, 489 U.S. at 391, 109 S.Ct. at 1206. Rather, a direct causal connection must exist between the policy and the alleged constitutional deprivation.[8] *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 404, 412 and 415 (1997). "This connection must be more than a mere 'but for' coupling between cause and effect . . . [the] policy must be affirmatively linked to the constitutional violation and be the moving force behind it." *Fraire v. City of Arlington*, 957 F.2d 1268, 1281 (5th Cir. 1992) (citations omitted).

---

[7]In *Doe v. Taylor Indep. Sch. Dist.*, 15 F.3d 443, 452–54 and fn.7–8 (5th Cir. 1994) (*en banc*) the Fifth Circuit adopted the *City of Canton v. Harris*, 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989) fault and causation standard of municipal liability for supervisory liability. ("The legal elements of an individual's supervisory liability and a political subdivision's liability, however, are similar enough that the same standards of fault and causation should govern.") Accordingly, the above analysis applies to both the  individual and official capacity claims asserted against the Sheriff.

[8]The Brown Court explained that "Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights." *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 415 (1997).  Accordingly, a plaintiff must show that the action was taken with the requisite degree of culpability and must therefore demonstrate a direct causal link between the complained of inadequacy and the deprivation of a federally protected right. *See Id.,* 520 U.S. at 404.  Further, the connection between the alleged inadequacy and the specific constitutional violation "must be strong." *Id.* at 412.

Moreover, deliberate indifference is a stringent standard of fault requiring proof that a supervisor "disregarded a known or obvious consequence of his action"; a showing of negligence or even gross negligence will not suffice.  *Estate of Davis*, 406 F.3d at 381. Moreover, "[p]roof of more than a single instance of the lack of training or supervision causing a violation of constitutional rights is normally required before such lack of training or supervision constitutes deliberate indifference." *Thompson*, 245 F.3d at 459; *Mesa*, 543 F.3d at 274; *Brumfield*, 551 F.3d at 329 *citing Burge v. St. Tammany Parish,* 336 F.3d 363, 370 (5th Cir. 2003) *quoting Thompson,* 245 F.3d at 459; *Brown*, 623 F.3d at 253 *citing Estate of Davis*, 406 F.3d at 381.

In this case, the plaintiffs have failed to demonstrate that the Sheriff's subordinate Deputies violated Davis' Constitutional rights.  Thus, a direct causal connection between the Sheriff's alleged inadequate training, supervision or discipline and a constitutional deprivation is lacking.  Stated differently, the plaintiffs have failed to establish that a causal link exists between the alleged failure to train, supervise or discipline and any violation of Davis' Constitutional rights.  For this reason, summary judgment in favor of Sheriff Theriot is proper.

This Court's conclusion is bolstered by decisions of the Fourth Circuit which have expressly held that "a claim of inadequate training under section 1983 cannot be made out against a supervisory authority absent a finding of a constitutional violation on the part of the person being supervised." *Temkin v. Frederick County Commissioners*, 945 F.2d 716, 723-724 (4th Cir. 1991); *see also Belcher v. Oliver*, 898 F.2d 32, 36 (4th Cir. 1990) (dismissing claims against a Mayor and Chief of Police on Summary Judgment because there was no underlying

19

constitutional infraction and, accordingly, no need to reach the question of whether a municipal policy was responsible for the officers' actions).

Moreover, even if the requisite causal link had been established, the plaintiffs have failed to allege "with specificity" how the Sheriff's training, supervision or discipline was defective and have failed to produce any evidence substantiating their general and conclusory allegations that Davis' claimed constitutional violation resulted from a deliberately indifferent training, supervisory or disciplinary failure. This is insufficient under *Roberts*. Furthermore, plaintiffs have not alleged nor adduced any evidence demonstrating the requisite pattern of similar violations arising from inadequate training, supervision or discipline necessary to support a finding of deliberate indifference.

Plaintiffs assert that they have met their burden because "even though [the Deputies] received training, the Sheriff had little to do with it and provided no direct involvement." However, each Deputy testified by deposition as to their extensive training. Each was first trained at an approved Police Academy, as a result of which each earned their Police Officer's Standardized Training ("POST") certification. [Champagne, at pg. 11-16; Jones, at pg. 12-16; Bonvillain, at pg. 7-9]. Each Deputy also testified that they undergo at least annual renewals of that certification. [ Bonvillain, at pg. 23-24, 9-11; Jones, at pg. 29, 32, 38; Champagne, at pg. 16-19]. Champagne, Jones and Bonvillain further testified that they received training at various other courses and seminars on issues related to narcotics investigations, while both Jones and Bonvillain also discussed "on-the-job training." [Champagne, at pg. 23-28; Jones, at pg. 17-20, Bonvillain, at pg. 12, 13, 21]. While there may be differences in the Deputies'

20

testimony regarding the extent of their training, there is no question that they did indeed receive training.  Moreover, the Court is unaware of any requirement that the Sheriff personally train his Deputies, and plaintiff's apparent dissatisfaction with Sheriff Theriot's training program cannot negate the fact that the training occurred. *See Brumfield*, 551 F.3d 329.

Plaintiffs further assert that Sheriff Theriot provided little to no supervision over his men during this incident and did not call or come out to the scene after Davis had been shot. However, such direct supervision by the Sheriff is not Constitutionally required.  Deputies Champagne and Jones testified as to the chain of command, including the fact that the Narcotics unit was directly supervised by a Lieutenant, Lieutenant Troy LeBlanc, who presumably reported to a higher ranked officer. [Champagne at pg. 28; Jones, at pg. 22, 27, 36-45, 66-68].  Champagne additionally testified as to his communications with Lieutenant LeBlanc prior to the commencement of the operation, and his approval of same, and it is undisputed that Lieutenant LeBlanc was advised of the shooting immediately thereafter, prompting LeBlanc to go to the scene. [Champagne, at pg. 42-46, 113; Jones, at pg. 66-68; Bonvillain, at pg. 46].

Finally, although the plaintiffs assert that summary judgment is premature because they were prevented from conducting discovery on the claims against the Sheriff, the Court disagrees. [*See* rec. doc. 35].  Had there not been a stay entered in this case due to a conflict of interest involving former plaintiffs' counsel, discovery could have commenced on all claims as early as February 20, 2014 when the Rule 26 Conference between the parties was to have taken

place.

Current counsel for the plaintiffs was enrolled on March 7, 2014.  The instant Motion was not filed until July 22, 2014.  Plaintiff's counsel moved for a continuance of the hearing date and an order compelling the depositions of the defendant Deputies. [rec. doc. 22]. Counsel never sought to depose the Sheriff, nor did counsel seek to compel discovery in any form from the Sheriff.  Accordingly, while the Court ordered the depositions of the defendant Deputies be limited to their claim of qualified immunity, there was no such ruling with respect to discovery *vis-a-vis* the Sheriff. [*See* rec. doc. 28].  Moreover, there was no subsequent discovery Motion filed on behalf of the plaintiffs seeking further or additional discovery with respect to the claims asserted against either the Deputies or the Sheriff.

Finally, despite this Court's limitation on the depositions of the Deputies, review of these depositions reveals that counsel was, in fact, permitted to discover extensive information about the Deputies experience, training and supervision.  Thus, the Court does not find the instant ruling premature.

For these reasons, the plaintiffs' federal claims asserted against Sheriff Theriot will be dismissed with prejudice.

**IV.  State Law Claims**

In light of the above, all federal claims asserted against the defendants are dismissed. Accordingly, no federal question remains before this court.

A district court may decline to exercise supplemental jurisdiction if the court has

22

dismissed all claims over which it had original jurisdiction.  28 U.S.C. § 1367(c)(3); *Nowell v. Acadian Ambulance Service*, 147 F.Supp.2d 495, 510 (W.D. La. 2001).  Indeed, when a court dismisses all federal claims before trial, the general rule is to dismiss any pendent claims.  *Id. citing Bass v. Packwood Hospital*, 180 F.3d 234, 246 (5th Cir. 1999) *citing Wong v. Stripling*, 881 F.2d 200, 204 (5th Cir. 1989); *Parker & Parsley Petroleum v. Dresser Industries*, 972 F.2d 580, 585 (5th Cir. 1992).  However, the dismissal should be without prejudice.  *Id*.  Accordingly, the undersigned declines supplemental jurisdiction over the state law claims asserted by the plaintiffs.  Those claims will be dismissed without prejudice.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment [rec. doc. 20] is **GRANTED** as follows.  All federal § 1983 claims asserted by the plaintiffs against Sheriff Theriot, Deputy Champagne, Deputy Jones and Deputy Bonvillain are **DISMISSED WITH PREJUDICE.**  All state law claims asserted by the plaintiffs against Sheriff Theriot, Deputy Champagne, Deputy Jones and Deputy Bonvillain are **DISMISSED WITHOUT PREJUDICE**.

Signed June 29, 2015, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE